UNITED STATES of America, Plaintiff–Appellee,

v.

Sophia GORDON, Defendant–Appellant.

No. 94–5386.

United States Court of Appeals, Fourth Circuit.

Argued July 11, 1995.

Decided Aug. 9, 1995.

**ARGUED:** Margaret Brooke Murdock, Thieblot, Ryan, Martin & Ferguson, Balti-more, MD, for appellant. Carmina Szunyog Hughes, Asst. U.S. Atty., Baltimore, MD, for appellee. **ON BRIEF:** Lynne A. Battaglia, U.S. Atty., Baltimore, MD, for appellee.

Before WILKINSON and WILLIAMS, Circuit Judges, and SHEDD, United States District Judge for the District of South Carolina, sitting by designation.

Affirmed by published opinion. Judge WILKINSON wrote the opinion, in which Judge WILLIAMS and Judge SHEDD joined.

## OPINION

WILKINSON, Circuit Judge:

Appellant Sophia Gordon pled guilty to aiding and abetting bank larceny, in violation of 18 U.S.C. §§ 2 and 2113(b), and was sentenced under the U.S. Sentencing Guidelines to a total of 14 months imprisonment. Gordon now raises several challenges to this sentence, arguing that the district court erred in imposing enhancements to her offense level beyond those listed in her plea agreement, and abused its discretion in refusing to recuse itself at the time of her sentencing hearing. It is plain that the district court neither erred nor violated its duty of impartiality in any way. Thus, we reject the appellant's contentions and affirm the judgment of the district court.

### I.

On the morning of June 26, 1992, two armed men broke into the Slavie Federal Savings and Loan Association in Baltimore, Maryland by ambushing two of the bank's tellers as they were preparing to open for the day. Holding the bank employees at gunpoint, the robbers forced them to disarm the security system. The two men had advance knowledge of the bank's defenses. When one of the tellers tried to enter a special code to alert the police while disarming the system, the robbers prevented her from doing so. They also knew where the vault was located, and knew exactly where the money was held in the vault. The thieves made off with $47,500 in cash.

During the subsequent investigation, one of the primary suspects was Eugene Johnson. Johnson ultimately pled guilty and agreed to cooperate with police. He told the authorities that he had not been one of the robbers, but had been involved in the planning of the theft. Johnson had a prior relationship with Sophia Gordon, one of the bank employees. Several weeks before the robbery, Johnson met with Gordon and asked her various questions about the bank's security. Gordon gave him details about the operation of the alarm system and its warning codes, as well as the hours and procedures of the employees who opened in the morning. She also provided information about the vault and the location of the money. Gordon then asked Johnson if he was planning to rob the bank. Johnson told her that the robbery would be carried out by others, but that he would get some of the money and give it to her.

Gordon was called to testify before a federal grand jury in November of 1992. During her testimony, she was questioned about her conversations with Eugene Johnson. Specifically, she was asked if she had ever told him about the alarm system, access codes, or any other information regarding bank security. Gordon denied that she had ever discussed these matters with Johnson.

Johnson was later sentenced based on his guilty plea to 37 months imprisonment for his involvement in the robbery. A co-defendant, Devon Moore, was acquitted following a jury trial. The government then turned its attention to Ms. Gordon and her role in the theft. After protracted negotiations, the government and Gordon's counsel settled on a plea agreement wherein Gordon pled guilty to aiding and abetting a bank larceny in violation of 18 U.S.C. §§ 2 and 2113(b). The agreement specified a base offense level of four, adjusted upward by seven levels for the amount of loss involved, and adjusted downward by two levels for acceptance of responsibility, resulting in a total adjusted offense level of nine.

The plea agreement was initially submitted to the court under Fed.R.Crim.P. 11(e)(1)(C). The district court did not accept it, and the defendant chose to resubmit it on a non-binding basis. The agreement thoroughly explained that the court was not required to accept the plea and could specify any sentence it found proper under the Guidelines. It states in part that:

[y]our client understands that neither the U.S. Probation Office nor the Court is bound by the stipulation, and that the Court will, with the aid of the presentence report, determine the facts relevant to sentencing. Your client understands that the Court cannot rely exclusively upon the stipulation in ascertaining the factors relevant to the determination of sentence. Rather, in determining the factual basis for the sentence, the Court will consider the stipulation, together with the results of the presentence investigation, and any other relevant information.

The plea agreement further noted that "the Court is not a party to this agreement. In the federal system sentence is imposed by the Court, and the Court is under no obligation to accept the stipulations set forth herein." Finally, the agreement specifically reiterates that the court is entitled to consider "all relevant information concerning [the defendant's] background, character, and conduct" in imposing a sentence.

A Presentence Report (PSR) was prepared by the U.S. Probation Officer in February of 1994 and submitted to the district court. The PSR recommended adopting the sentence reflected in the plea agreement. From its involvement in the prosecutions of Johnson and Moore, the court was aware of additional details of Gordon's case that were not mentioned in the PSR, including her perjurious grand jury testimony. Thus, after reviewing the PSR, the district court sent a letter to the Probation Officer asking her to submit a supplemental report on possible additional adjustments to the base offense level. In particular, the court requested information on an adjustment for obstruction of justice under § 3C1.1, as well as adjustments for more than minimal planning under § 1B1.1 (comment note 1(f)), abuse of trust under § 3B1.3, and potential adjustments or departures for the foreseeable use of firearms in the commission of the crime. The court's letter also invited both the govern-

ment and defense counsel to comment on these issues. The government noted in reply that it was bound by the plea agreement not to seek additional adjustments beyond those already incorporated in the plea. Defense counsel objected to the imposition of any additional adjustments to Gordon's offense level.

On April 11, a second PSR was submitted to the district court, recommending the additional adjustments mentioned in the court's letter. A sentencing hearing was then held on May 10, 1994. At the hearing, the defendant moved to recuse the trial judge on the grounds that he had abandoned his impartiality by requesting investigation of the additional adjustments. The motion was denied, and the court proceeded with sentencing. The offense level of nine suggested in the plea agreement was adjusted upward two levels for obstruction of justice to reflect Gordon's perjury before the grand jury. Another two levels were added for abuse of a position of trust. The final offense level as calculated by the district court was thirteen, and the sentence was fixed at fourteen months, plus two years supervised release. Defendant now appeals.

## II.

■ We first take up the matter of the district court's denial of the recusal motion. A trial court's decision to deny a recusal motion is reviewed only for abuse of discretion. *United States v. Mitchell,* 886 F.2d 667, 671 (4th Cir.1989). Initially, we reject appellant's implicit argument that the trial court should be recused because it had refused to accept her plea agreement *in toto.* The district court had every right to reject the plea agreement originally submitted to it under Rule 11(e)(1)(C). *See* U.S.S.G. § 6B1.1. When the agreement was resubmitted on a nonbinding basis, the defendant was advised of the judge's right to decline the plea's recommendations. The defendant nevertheless proceeded to submit the plea on this basis rather than be charged with a more serious offense. To be sure, in order to preserve the effectiveness of the plea bargaining system, courts usually will adopt most or all of the recommendations in a non-

binding plea agreement. Defendants enjoy no entitlement, however: plea bargains impose obligations on the prosecution, not the courts. *Santobello v. New York,* 404 U.S. 257, 262, 92 S.Ct. 495, 498–99, 30 L.Ed.2d 427 (1971). Thus, it cannot be an abuse of discretion to deny a recusal motion predicated on the district court's rejection of a plea agreement.

■ We next address defendant's assertion that the district court should have been recused from the sentencing process because, in considering the plea agreement's recommendations, it sought information beyond that reflected in the agreement and the original PSR. Defendant contends that the district court became an "advocate" when it ordered a supplemental report from the Probation Officer, and also acted improperly by having Gordon's grand jury testimony added to the record. Such actions, she argues, raise questions about the court's impartiality, meaning that the judge violated his duty to disqualify himself under 28 U.S.C. § 455(a).

■ Appellant's argument wholly misapprehends both the standards for recusal and the proper role of the trial judge in the sentencing process. The Supreme Court has recently spoken at length about the proper standards for judicial disqualification under § 455. In *Liteky v. United States,* —— U.S. ——, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994), a defendant in a criminal trial argued that judicial rulings and statements exhibiting "impatience, disregard ..., and animosity" toward the defense were grounds for recusal. 114 S.Ct. at 1151. The Court disagreed, explaining that "partiality" requires an apparent disposition toward a party that is "wrongful or inappropriate." *Id.* at ——, 114 S.Ct. at 1156. The mere fact that a judge may be "illdisposed" towards a defendant because of damaging evidence is not sufficient. *Id.* at ——, 114 S.Ct. at 1155. Moreover, "opinions held by judges as a result of what they learned in earlier proceedings" are not subject to "deprecatory characterization as 'bias' or 'prejudice.'" *Id.* Likewise, "judicial rulings alone almost never constitute valid basis for a bias or partiality motion." *Id.* at ——, 114 S.Ct. at 1157. Inevitably, such rulings arouse strong feelings. The

Supreme Court has made crystal clear, however, that litigants may not make the trial judge into an issue simply because they dislike the court's approach or because they disagree with the ultimate outcome of their case.

Appellant's attack on the trial court here is exactly such an attempt to circumvent an unfavorable ruling. The district judge did nothing even remotely inappropriate at any point during this case. Requesting additional information from the U.S. Probation Officer is most assuredly *not* a breach of judicial impartiality. *See* Fed.R.Crim.P. 32(b)(4)(G) (noting PSR must contain "any other information required by the court"). Nor is it improper for the trial court to supplement the record by looking to extra materials such as a defendant's grand jury testimony. The Sentencing Guidelines state that:

> [i]n determining the sentence to impose within the guideline range ... the court may consider, without limitation, any information concerning the background, character and conduct of the defendant unless otherwise prohibited by law. *See* 18 U.S.C. § 3661.

U.S.S.G. § 1B1.4. The comment to this Guidelines provision specifically refers to a court's power to consider information about additional crimes that are not accounted for in a plea agreement. *See* U.S.S.G. § 1B1.4, comment note 1. Section 3661 of title 18, referenced in § 1B1.4, likewise explains that

> [n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence.

18 U.S.C. § 3661.

■ As if this were not sufficient, the plea agreement itself discussed at length the power of the court to examine additional information beyond the agreement and the PSR. It specifically mentioned that the court may look to "any other relevant information." The defendant thus had more than adequate warning that her perjury and other damaging facts about her case could be taken into account by the court, even if not outlined in the plea.

Furthermore, the additional information that the court relied on in this case was derived solely from its involvement in the prior related proceedings of Johnson and Moore—an indisputably legitimate source of supplemental facts. *See, e.g., United States v. Page,* 828 F.2d 1476 (10th Cir.), *cert. denied,* 484 U.S. 989, 108 S.Ct. 510, 98 L.Ed.2d 508 (1987). Also, grand jury testimony by the defendant is hardly an inappropriate type of information for a trial court to use in sentencing. *See United States v. Patrick,* 542 F.2d 381 (7th Cir.), *cert. denied,* 430 U.S. 931, 97 S.Ct. 1551, 51 L.Ed.2d 775 (1977). The court explained that it considered this additional information because it was concerned about the defendant's continuing refusal to admit her perjury. Thus, there are many reasons why the court's request for material outside the plea agreement did not demonstrate partiality. If anything, the trial court should be commended for the diligent manner in which it fulfilled its duties during the sentencing process.

### III.

Next, appellant challenges the propriety of the two adjustments to her offense level imposed by the district court. These contentions are also without merit.

### A.

■ First, appellant maintains that a two-level enhancement for abuse of position of trust under § 3B1.3 is not possible because she falls within the "bank teller exception" mentioned in the commentary. The abuse of trust adjustment in § 3B1.3 provides:

> [i]f the defendant abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense, increase by 2 levels.

U.S.S.G. § 3B1.3. The commentary goes on to explain that:

> [p]ublic or private trust refers to a position of public or private trust characterized by professional or managerial discretion. ...
> For this enhancement to apply, the posi-

tion of trust must have contributed in some significant way to facilitating the commission or concealment of the offense.... This adjustment, for example, would apply in the case of an embezzlement of a client's funds by an attorney serving as a guardian, a bank executive's fraudulent loan scheme, or the criminal sexual abuse of a patient by a physician under the guise of an examination. This adjustment would not apply in the case of an embezzlement or theft by an ordinary bank teller or hotel clerk because such positions are not characterized by the above-described factors.

U.S.S.G. § 3B1.3, comment note 1. Gordon argues simply that because she was a bank teller, she did not hold a "position of trust" and so is not subject to § 3B1.3.

▮▮▮ We do not agree. The abuse of trust enhancement was not designed to turn on formalistic definitions of job type. *United States v. Johnson,* 4 F.3d 904, 916 (10th Cir.1993). Rather, several factors must be considered by courts to determine whether a defendant held a position of trust. First, courts ask whether the defendant had special duties or "special access to information not available to other employees." *United States v. Smaw,* 993 F.2d 902, 906 (D.C.Cir.1993). Second, the defendant's level of supervision or "degree of managerial discretion" is relevant. *United States v. Queen,* 4 F.3d 925, 928–29 (10th Cir.1993). Bank tellers who embezzle from their employers provide an example of a situation where there is little trust to abuse because the employees are closely supervised, and it is expected that wrongs they commit will be readily detected. *United States v. Hill,* 915 F.2d 502, 505–06 (9th Cir.1990). Third, the analysis also entails an examination of "the acts committed to determine whether *this* defendant is 'more culpable' than others" who hold similar positions and who may commit crimes. *Johnson,* 4 F.3d at 916 (emphasis in original). Overall, the question of whether a defendant held a position of trust must be approached from the perspective of the victim. *United States v. Moore,* 29 F.3d 175, 179–80 (4th Cir.1994). Because the inquiry requires a "sophisticated factual determination," a trial court's finding will be reversed only if clearly erroneous.

*United States v. Helton,* 953 F.2d 867, 869 (4th Cir.1992).

▮▮▮ In this case, Sophia Gordon occupied a position of trust in the bank that gave her access to a great deal of highly sensitive knowledge about bank security. First, there was evidence in the record that Gordon was a "head teller," and had "special access" to the security codes beyond that provided to non-supervisory personnel. Second, this was not a simple matter of a bank teller sticking her hand in the till. *See id.* at 869 (noting ordinary bank teller theft was easy to detect and so did not qualify for enhancement). The abuse of trust was not internal to the job and so could not have been easily discovered by the defendant's supervisors. Rather, it was an "external" violation of trust that betrayed the victim to outsiders. Third, facilitating an armed robbery is indisputably more culpable than mere theft or embezzlement because of the danger to others. In such a situation, the § 3B1.3 adjustment may apply to a bank teller or similar employee who, although perhaps not vested with complete discretion, holds some substantial degree of trust. *See, e.g., Johnson,* 4 F.3d at 916–17 (applying § 3B1.3 enhancement to bank teller who gave information to robbers); *United States v. Parker,* 903 F.2d 91, 104 (2d Cir.) (applying § 3B1.3 enhancement to security guard), *cert. denied,* 498 U.S. 872, 111 S.Ct. 196, 112 L.Ed.2d 158 (1990). Thus, the conclusion that Gordon was in a position of trust that qualified for § 3B1.3 was not clearly erroneous.

▮▮▮ Moreover, it is clear that this trust was abused. The district court found that Gordon betrayed her employer and co-workers by giving vital security information to someone she knew was planning a theft. It was Gordon's information that allowed the thieves to defeat the alarm system and locate the money in the bank. She clearly used her position and the knowledge with which she had been entrusted to aid an armed robbery wherein her fellow employees' lives were endangered. The conclusion that such acts amounted to an abuse of trust that significantly facilitated the crime must be upheld.

## B.

Second, appellant contends that the trial court should not have imposed a two-level enhancement for obstruction of justice under § 3C1.1. She argues that there was no clear finding in the record that she had lied to the grand jury, and even if there was, the false testimony was not material and did not significantly obstruct the investigation in such a way as to warrant the § 3C1.1 enhancement.

Sentencing Guideline § 3C1.1 states: "if the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense, increase the offense level by 2 levels." U.S.S.G. § 3C1.1. The commentary provides that perjury is among the acts covered by this section. U.S.S.G. § 3C1.1, comment note 3(a). Perjury is generally defined as false testimony regarding a material matter, given with willful intent to provide false evidence rather than as a result of confusion or mistake. *See* 18 U.S.C. § 1621.

The Supreme Court has held that to support an enhancement for perjury under § 3C1.1, there should be an independent finding of perjury by the district court. *United States v. Dunnigan,* — U.S. —, —, 113 S.Ct. 1111, 1115, 122 L.Ed.2d 445 (1993). This finding should "address each element of the alleged perjury in a clear and separate" statement, but it is also sufficient if it simply "encompasses all of the factual predicates for a finding of perjury." *Id.*

Contrary to the defendant's contention, the district court in this case provided a clear and comprehensive finding of perjury that fully satisfies the *Dunnigan* requirement. In its Memorandum of Decision Regarding Sentence Guideline Computation, the trial court reviewed the numerous statements by Gordon during her grand jury testimony denying that she had ever discussed bank security matters with Eugene Johnson. It then stated:

[t]he answers to these questions were false as is established by nothing less than the Defendant's own stipulation contained in the plea agreement itself. The answers were unquestionably material to the Grand Jury investigation. Moreover, there is no credible suggestion that the Defendant did not know that the foregoing answers were false when given. She deliberately set out to obstruct the investigation by providing known false testimony.

J.A. 127. Nothing more is necessary.

Nor is there any merit to appellant's suggestion that the court erred by concluding that her perjury was material. A finding of materiality will not be reversed unless clearly erroneous. *United States v. Hicks,* 948 F.2d 877, 886 (4th Cir.1991). Here, the defendant's false testimony dealt with the critical issue of how the robbers gained the knowledge that they used to successfully carry off the heist. It served to deflect attention from Gordon's role and minimize suspicions generated by her relationship with Johnson, one of the suspected bank robbers. Thus, the court's conclusion that this perjury was material and obstructed or attempted to obstruct the investigation was clearly correct, not clearly erroneous.

## IV.

For the foregoing reasons, the judgment of the district court is

*AFFIRMED.*