**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                No. 97-4323

JOHN CALVIN EVANS, JR.,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                No. 97-4324

ROBERT EARL PRIMOVIC, JR.,
Defendant-Appellant.

Appeals from the United States District Court
for the Eastern District of North Carolina, at Wilmington.
William L. Osteen, District Judge, sitting by designation.
(CR-95-63-BO)

Argued: March 5, 1999

Decided: September 22, 1999

Before TRAXLER and KING, Circuit Judges,
and LEE, United States District Judge for the
Eastern District of Virginia, sitting by designation.

_____


Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Scott Fitzgerald Wyatt, WYATT, EARLY, HARRIS & WHEELER, L.L.P., High Point, North Carolina, for Appellant Evans; George Alan DuBois, FEDERAL PUBLIC DEFENDER'S OFFICE, Raleigh, North Carolina, for Appellant Primovic. Scott L. Wilkinson, Assistant United States Attorney, Raleigh, North Carolina, for Appellee. **ON BRIEF:** Janice McKenzie Cole, United States Attorney, Anne M. Hayes, Assistant United States Attorney, Raleigh, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Petitioner-defendants James C. Evans ("Evans") and Robert Primovic ("Primovic") appeal their convictions and sentences for conspiracy, mail fraud, and money laundering. Evans, Primovic, and another co-defendant, Tommy New ("New"), were convicted for participating in a scheme whereby underfilled soybean oil containers were sold to the United States Department of Agriculture ("USDA"). The defendants were tried by jury in the United States District Court for the Eastern District of North Carolina. Additionally, Evans was convicted for tax evasion in a separate bench trial. For the reasons stated below, the judgment of the district court is affirmed.

I.

Louisiana Filling, Inc. in Wilmington, North Carolina ("LFI-W") was an oil filling facility owned by defendant New and William Hudson ("Hudson").[1] New operated LFI-W out of offices in South Caro-

_____

[1] New and Hudson also owned another facility in New Orleans, Louisiana. Although both facilities were equally owned, they operated independently. Hudson operated the New Orleans filling facility.

2

lina. LFI-W participated in the "Food for Peace Program," whereby the USDA would purchase soybean oil from private contractors for shipment to volunteer organizations and famine relief agencies for distribution in third world countries. In 1991, the USDA and United States Agency for International Development ("USAID") began receiving complaints from relief agencies in third world countries regarding undershipments of soybean/vegetable oil received from LFI-W.

The USDA required that the participating companies, including LFI-W, meet certain standards and required that the oil be inspected by a representative from the Federal Grain Inspection Service ("FGIS"), an agency of the USDA. Given the choice of inspection at an USDA warehouse or on-site at LFI-W, LFI-W opted to have an on-site FGIS inspector. The inspector was to oversee the filling operations for the USDA, performing a number of sample weighings of oil cans and recording these weights on a form. After completion, the form was mailed to the FGIS field office in Baltimore. Based on the report, FGIS would mail a Commodity Inspection Certificate. The Commodity Credit Corporation ("CCC"), a wholly-owned corporation within the USDA, used the forms to calculate the money owed to LFI-W for the soybean oil shipments.

In 1985, defendant Evans started as the on-site FGIS inspector. In September 1986, New hired Evans as the assistant manager of LFI-W. Eventually, New promoted Evans to manager, where he continued in that position until 1992. As manager, Evans was responsible for supervising the filling operations of LFI-W. From 1989 to 1992, defendant Primovic was the FGIS inspector assigned to LFI-W. As such, Primovic was responsible for overseeing the filling operations on behalf of the USDA and insuring that containers were filled pursuant to regulation.

After the complaints, the USDA began an investigation of LFI-W, wherein the USDA randomly weighed LFI-W containers and discovered containers were underfilled. Investigative agents interviewed both Evans and Primovic. During the course of several interviews, Primovic made certain admissions. Primovic admitted that he had not performed his job properly and that he sent forms to the Baltimore office which were not prepared correctly. Although Primovic was

3

required to be present on the filling line to monitor the filling process, he stated that he only spent ten percent of his time on the line. Primovic also admitted that he was aware that LFI-W employees were consistently underfilling cans. He stated that despite finding underfilled cans, he did not include the findings in his report. He admitted that he never rejected containers because of underfilling.

New, Evans, and Primovic were tried for conspiracy to make false statements and to defraud the CCC, mail fraud, and money laundering (only New and Evans). Records introduced at trial indicated that LFI-W purchased less oil than necessary to fill its orders. Several employees testified that Evans instructed them on the practice of "working the production," whereby containers were underfilled. In exchange, Evans promised to pay employees for eleven hours of work for only five or six hours of actual work. The employees also testified that Evans informed them when USDA representatives were coming and to fill the containers correctly.

While Primovic did not testify at trial, a Government agent introduced statements allegedly made by Primovic. Primovic had admitted that reports to the USDA from June 1989 to December 1992 were false. Also, the agent testified, "Well, as of June of 1989 he [Primovic] said that he could be counted on to not report the underfilling that was going on at Louisiana Filling." (J.A. at 400).

The district court also admitted the testimony of Ms. Mary Stanko ("Ms. Stanko"), the former executive secretary who worked with New. Ms. Stanko testified that Evans told her that his bonus checks were for "making up oil." In recounting a conversation with New which occurred after the investigation began, Ms. Stanko stated that: "We just discussed everything in general, and then he [New] made the statement that if John Evans would just keep his mouth shut, that we could get through all this." (J.A. at 645). Evans objected to the statement arguing that it was made outside the time period of the conspiracy and implicated Evans. Evans moved for mistrial. The court denied the motion. Although the statement was made outside the period as alleged in the indictment, the court noted that the statement was in furtherance of the conspiracy as "anything to keep the conspiracy from being found out or keep it from having to end. . . ." (J.A. at 653). However, the court provided a limiting instruction to the jury that the

4

statement should only be considered against defendant New, and not defendant Evans.

The Government also presented evidence that Evans had loaned Primovic money over the two-year period. Furthermore, the evidence indicated that Evans received several bonus checks from New. Evans also received bonus payments in the form of checks drawn on an account maintained by New in the name of TJN, Inc., and made payable to NCNB Mortgage and to NationsBank Mortgage, both on behalf of Evans. Evans did not report these bonuses on his taxes. Although Evans indicated that the sums were partly loans, they were never repaid.

After the jury trial, the three defendants were convicted of all charges. During a separate bench trial, Evans was tried for tax evasion and found guilty. Each man was sentenced.[2] Evans and Primovic appeal.[3]

Defendants raise several issues on appeal. Evans argues that the district court erred in admitting statements made by nontestifying co-defendants Primovic and New because they violated his Sixth Amendment right to confrontation. Additionally, Evans contends that New's statement to Ms. Stanko was made outside of the time period of the conspiracy. Finally, Evans contends that the district court erred in not granting his motion for judgment of acquittal on the money laundering charge. Primovic contends that the court erred in imposing a two-level adjustment for "abuse of position of trust" in computing his sentence. We review these issues below.

_____

[2] New was sentenced to eighty-one months in prison and ordered to pay one million dollars in restitution. Evans was sentenced to a sixty-five month term of imprisonment and ordered to pay $15,000 in restitution. Primovic was sentenced to thirty-four months in prison and ordered to pay $5000 in restitution.

[3] New waived his right to appeal as part of his plea agreement with the Government.

5

II.

The district court's evidentiary rulings are reviewed for abuse of discretion. United States v. Ham, 998 F.2d 1247, 1252 (4th Cir. 1993). In reviewing a district court's denial of a motion for judgment of acquittal, the decision is reviewed under the sufficiency of the evidence standard. United States v. Brooks, 957 F.2d 1138, 1147 (4th Cir. 1992).

A question involving the legal interpretation of the United States Sentencing Guidelines ("U.S.S.G.") terminology and the application of that terminology to a particular set of facts is reviewed de novo, while factual determinations that underlie application of the U.S.S.G. are reviewed for clear error. United States v. Daughtrey, 874 F.2d 213, 217-18 (4th Cir. 1989). The proper review for an "abuse of position of trust" enhancement under U.S.S.G. § 3B1.3 is the clearly erroneous standard. United States v. Helton, 953 F.2d 867, 869 (4th Cir. 1992).

III.

Defendant Evans argues that the district court erred in admitting statements made by nontestifying co-defendants Primovic and New because they violated his Sixth Amendment right to confrontation. Bruton v. United States, 391 U.S. 123 (1968). In both instances, the co-defendants' statements were introduced by another witness. While Primovic did not testify at trial, a Government agent introduced the following statement: "Well, as of June of 1989 he[Primovic] said that he could be counted on to not report the underfilling that was going on at Louisiana Filling." (J.A. at 400). In recounting a conversation with defendant New, Ms. Stanko testified, "We just discussed everything in general, and then he made the statement that if John Evans would just keep his mouth shut, that we could get through all this." (J.A. at 645).

Although the district judge gave a limiting instruction to the jury, Evans argues that the Primovic statement directly implicated him in the mail fraud and conspiracy charges and he was unable to cross-examine Primovic about the statements. Evans makes the identical argument in reference to Ms. Stanko's testimony regarding New's

6

statement. Additionally, he argues that the statement was made outside of the conspiracy and that the court should have granted his motion for mistrial on that basis. At trial, the district court denied the motion. Although the statement was made outside the period as alleged in the indictment, the district court noted that the statement was in furtherance of the conspiracy as "anything to keep the conspiracy from being found out or keep it from having to end. . . ." (J.A. at 653). The district court did provide a limiting instruction that the statement should only be considered against defendant New, and not Evans.**4** (J.A. 660). We affirm the district court's rulings.

The Confrontation Clause of the Sixth Amendment guarantees the right of a criminal defendant "to be confronted with the witnesses against him." The right of cross examination is included in the accused's confrontation rights. Bruton, 391 U.S. at 126. In Bruton, the Court held that admitting a co-defendant's confession implicating another defendant at a joint trial constituted prejudicial error despite a limiting instruction. However, the Supreme Court has held that the Confrontation Clause is not violated by the admission of a nontestifying co-defendant's confession with a proper limiting instruction when the confession is redacted to eliminate the defendant's name and any reference to his existence. Richardson v. Marsh , 481 U.S. 200, 211 (1987). Thus, in Marsh, the Court expressly declined to extend Bruton. Id. In this case, the agent's testimony reciting Primovic's redacted statement did not lead to the inference that Evans was originally named in the statement nor was the person protected through the redaction. In fact, the statement made no reference to Evans. Thus, Evans' Sixth Amendment right to confrontation was not violated and the district court did not err in admitting the testimony.

The district court did not err in admitting New's statement through
_____

**4** The district court's ruling that Mr. New's statement to Ms. Stanko was not admissible against Mr. Evans was in error. As stated herein, the co-conspirator statements within Federal Rule of Evidence 801(d)(2)(E) are admissible against all co-conspirators. United States v. Shores, 33 F.3d 483, 442 (4th Cir. 1994). This Court exercises its discretion to affirm the district court's evidentiary ruling on different grounds than those employed by the district court. United States v. Dorsey, 45 F.3d 809, 814 (4th Cir. 1995).

7

Ms. Stanko. This Court has held that <u>Bruton</u> is inapplicable when the statement is by a co-conspirator and in furtherance of the conspiracy pursuant to Federal Rule of Evidence 801(d)(2)(E). <u>United States v. Shores</u>, 33 F.3d 438, 442 (4th Cir. 1994). A statement by a co-conspirator is "in furtherance" when it was intended to promote the conspiracy's objectives, whether or not the objective is achieved. <u>Id.</u> at 443. When the co-conspirator makes statements to a third party who is not a member of the conspiracy, such statements can still be "in furtherance" if they were made to induce that third party to either join the conspiracy or act in such a way that would assist it in accomplishing those objectives. <u>Id.</u> at 444. In order to determine whether the comment was made to enlist the third party, the Court should look to the context in which the statement was made. <u>Id.</u>

In <u>Shores</u>, the Court held that the district court did not clearly err in concluding that post-indictment statements about plans to evade conviction were in furtherance of the charged conspiracy. <u>Id.</u> at 443. In that case, the defendant, after being arrested, told a third party of his co-defendant's and his intention to have witnesses give perjured testimony, to kill another witness, and to commit other various acts. <u>Id.</u> at 440. The Court noted that the statements were made during the same conversation where one of the co-conspirators had sought the advice of the third party regarding how to fabricate a defense and how to have a potential witness killed. <u>Id.</u> at 444. The Court expressly stated that it is of no consequence to the Rule 801(d)(2)(E) inquiry whether the conspiracy was characterized as a continuation of the original conspiracy, or a separate but related conspiracy to obstruct justice. <u>Id.</u> at 443. Thus, the statements were still in furtherance of the conspiracy even though they were made at the time the defendants were incarcerated and pending prosecution.

In this case, Ms. Stanko is also a third party who was not indicted as a member of the underlying conspiracy. New's statement to Ms. Stanko was made after the beginning of the USDA's investigation. However, it pertained to the manner in which the defendants could avoid prosecution--if "Evans would just keep his mouth shut." The logical inference of New's comment to Ms. Stanko, his personal assistant, was directing her to make no statements which might assist the ongoing Government investigation and to conceal wrongdoing. New's statement falls directly within <u>Shores</u>. <u>See id.</u> at 444. While the

8

Court acknowledges that New's statement was intended to silence Ms. Stanko, there is no evidence or indication that Ms. Stanko committed any illegal conduct. In consideration of the circumstances, the district court did not err in concluding that the statement was in furtherance of the conspiracy by continuing it or hiding it from investigating officials.

IV.

The district court denied Evans' motion for judgment of acquittal on the money laundering charges. The charges centered on the issuance of two checks drawn on the account of TJN, Inc. (a company operated by defendant Tommy Joe New) at Carolina Bank & Trust and made payable to NCNB Mortgage and NationsBank Mortgage on behalf of Evans. According to Evans, the Government's evidence was insufficient to prove that the checks were drawn to promote mail fraud or any other unlawful activity. We affirm the district court's decision.

As stated supra, this Court only looks to the sufficiency of the evidence. To sustain a money laundering conviction under 18 U.S.C. § 1956(a)(1)(A)(I), the Government was required to prove that the transactions were conducted with the intent to promote the unlawful activity. United States v. Heaps, 39 F.3d 479, 484 (4th Cir. 1994)(holding that the evidence did not support the inference that the transactions were conducted for the purpose of promoting illegal activity where sums were payment for a final drug transaction). This Court has recognized that under appropriate circumstances, an intent to promote may be shown through evidence that the financial transaction was intended to create goodwill for ongoing or subsequent transactions. Id.

In this case, New paid Evans a series of bonus payments between 1990 and 1992. The Government presented evidence that Evans made several statements that his bonuses were for "making up oil." Furthermore, documents produced at trial indicated that the bonus payments were based upon a percentage of the soybean oil that New did not have to purchase because of the underfilling scheme. Some bonus payments were in the forms of checks to Evans. The evidence presented at trial indicated that the mortgage payments were also bonus

9

payments. These payments were made from a company owned by New for mortgage payments on Evans' behalf. Other payments were hidden within expense reimbursement checks to Evans or incorrectly recorded on the books. The evidence tied a series of payments over a period of time to Evans' involvement in the underfilling scheme. Thus, the evidence sufficiently established that the bonus payments were made to encourage Evans to continue the scheme of underfilling the containers, and supports Evans' conviction of money laundering.

V.

In sentencing Primovic, the district court imposed a two-level adjustment for "abuse of position of trust" pursuant to U.S.S.G. § 3B1.3. The court found that Primovic's position as the on-site FGIS inspector warranted the enhancement. Primovic contends that his job was a low-skill, entry level position and he did not exercise independent judgment or occupy a position of trust within the meaning of the guidelines. See United States v. Helton, 953 F.2d 867 (4th Cir. 1992) (holding that the imprest fund clerk for a government office did not have a position of trust within the "abuse of position of trust" adjustment, where her duties amounted to that of an ordinary teller). As stated supra, the district court's decision is reviewed for clear error.

This Court has held that several factors must be weighed to determine whether a defendant held a position of trust. See United States v. Gordon, 61 F.3d 263, 269 (4th Cir. 1995) (holding that defendant's abuse of her position as "head teller" to aid the perpetrators warranted an enhancement for abuse of trust). One factor for consideration is whether the defendant had special duties or special access to information not available to other employees. Id. Also, the court should look to the defendant's level of supervision or degree of managerial discretion. Id.

In this case, Primovic's special duties justify the abuse of trust enhancement. Primovic was the sole on-site inspector for the FGIS. He alone was responsible for overseeing the filling operations and was the sole source of information concerning the accuracy of the weight containers. He had the authority to remove the underfilled containers from the line. Furthermore, Primovic was not subject to direct oversight or supervision, but was the overseer of the filling

10

operation. FGIS depended on Primovic. Thus, Primovic's level of supervision and managerial discretion justified the enhancement.

Evans and Primovic raised additional issues on appeal. However, based on the Court's disposition of the other issues, there is no need to address those arguments. For the reasons stated above, the judgment of the district court is affirmed.

AFFIRMED

11