UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

CHARLOTTE BINAKONSKY, individually
and as mother and next friend of
the minor children; JANE MARILYN
BINAKONSKY, minor child of the
deceased; RACHEL DARA
BINAKONSKY, minor child of the
deceased; LUCY ANN BINAKONSKY,
minor child of the deceased; EMILY
BINAKONSKY, minor child of the
deceased,

> *Plaintiffs-Appellants,*

v.

FORD MOTOR COMPANY,

> *Defendant-Appellee.*

No. 99-2308

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Alexander Harvey II, Senior District Judge.
(CA-95-2529-H)

Argued: December 4, 2000

Decided: February 15, 2001

Before NIEMEYER, WILLIAMS, and TRAXLER, Circuit Judges.

---

Affirmed by unpublished per curiam opinion.

---

## COUNSEL

**ARGUED:** Martin Henry Freeman, FREEMAN & FREEMAN, P.C.,
Rockville, Maryland, for Appellants. Robert Whitefield Powell,

Office of the General Counsel, FORD MOTOR COMPANY, Dear-born, Michigan, for Appellee. **ON BRIEF:** Grace R. den Hartog, Joseph K. Reid, III, MCGUIRE, WOODS, BATTLE & BOOTHE, L.L.P., Richmond, Virginia; Paul F. Strain, VENABLE, BAETJER & HOWARD, L.L.P., Baltimore, Maryland, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

## OPINION

PER CURIAM:

David Binakonsky died after he drove his 1988 Ford Econoline van head-on into a tree and the van caught fire. His wife and children (the "family") then filed a wrongful death action against Ford Motor Company. The district court granted judgment as a matter of law in favor of Ford, and the family appeals. We affirm.

I.

The family's case against Ford is premised on the "crashworthi-ness" doctrine. That is, the family does not contend that a defect in the van caused the initial accident, but that "a defective product or a defectively designed product caused or aggravated injuries after the initial accident." *Binakonsky v. Ford Motor Co.*, 133 F.3d 281, 284 (4th Cir. 1998) ("*Binakonsky I*"). According to the family, the van's defective design caused the fuel lines to rupture on impact and Binakonsky died not from the initial impact, but from a gasoline-fed post-collision fire. The district court granted summary judgment to Ford, but this court reversed much of the district court's opinion and remanded for trial. *See Binakonsky I*, 133 F.3d at 291.

Prior to trial, the district court ruled against the family on several pre-trial motions, including a motion by the family seeking to give collateral estoppel effect to a state court jury verdict against Ford in

an action alleging similar fuel-line defects,[1] the family's motion seeking to preclude any evidence of alcohol use by Binakonsky on the day of the crash, and the family's attempt to prevent Ford from raising misuse and assumption of the risk as affirmative defenses. The family also requested that the district court recuse itself, which the court declined to do. The case then proceeded to trial.

Just before the family's design defect expert was to take the stand, the district court excluded certain documents that the family intended to introduce through the expert. After discussing the ruling with the expert, counsel for the family returned to the courtroom and made the following statement:

> I have consulted with [the design defect expert] and explained to him the Court's rulings on the exhibits you have ruled on today, as well as other matters. But mainly on the exhibits you ruled on today. In his words, he says that the factual basis of his opinion[ ] has been gutted and that he, therefore, cannot express an opinion based on a factual basis. Accordingly, because of the Court's ruling, and because of the information I received from our expert witness, we'd rest.

J.A. 696. The court brought the jury back in, and the family formally rested its case. Counsel again stated that the family's expert could not testify because the "factual underpinnings for his opinion[ ] have been gutted," and that "if we can't make the case through our expert witness on liability, . . . there is no basis for going forward." J.A. 698.

After the jury was dismissed, counsel for the family, at the urging of the district court, made a brief proffer of the evidence that would have been submitted on the question of damages. Counsel did not proffer the expert's reports "because they are no longer accurate, because of the fact that you have ruled out those exhibits." J.A. 701. Ford then moved for judgment as a matter of law based on the family's failure to present any evidence of a design defect or proximate cause. Counsel for the family stated that the expert's deposition,

---

[1]The family's appeal of the district court's collateral estoppel order was dismissed by this court as interlocutory.

which had been submitted to the court by Ford during its motion, should be considered as the family's proffer of its evidence of proximate cause, but still insisted that the court's ruling "gutted" the expert's testimony as to the existence of a design defect. The district court granted Ford's motion for judgment as a matter of law, and this appeal followed.

## II.

On appeal, the family raises numerous issues, including the appropriateness of the district court's voir dire of the jury panel, the denial of the motion to recuse, and the propriety of various evidentiary rulings. Before we can consider these issues, however, we must determine the effect of the family's resting of its case without presenting any expert testimony and the resulting grant of judgment as a matter of law in favor of Ford.

The family does not challenge on appeal the granting of the motion for judgment as a matter of law. In fact, counsel for the family conceded at trial that there was no evidence of a design defect at the time the family rested. The family, however, contends that the district court's exclusion of the documents upon which the expert intended to rely left it no choice but to withdraw its expert and rest its case.

The difficulty with this argument is that counsel for the family did not put the expert on the stand to explain on the record how and why the exclusion of the documents made it impossible for him to testify. All we have is counsel's statement that the expert said the ruling gutted the factual basis for his opinion. While we do not doubt counsel's word, the absence of a record makes it extremely difficult for us to determine whether an error occurred and, if so, to determine in the context of the entire proceeding whether the error warrants reversal. Nevertheless, we will address this issue as best we can given the record before us.

For purposes of this opinion, we will assume that the district court erred by excluding the documents that led to the expert's refusal to testify. As we explain below, however, this error is insufficient to excuse the family's resting without establishing a *prima facie* case.

Rule 703 of the Federal Rules of Evidence states:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data *need not be admissible in evidence.*

Fed. R. Evid. 703 (emphasis added). Because there is no suggestion that the documents at issue are not "of a type reasonably relied upon by experts in the particular field," the district court's exclusion from evidence of some of the documents upon which the family's expert intended to rely in no way precluded the expert from relying on those documents during his testimony. *See, e.g.*, *Redman v. John D. Brush & Co.*, 111 F.3d 1174, 1179 (4th Cir. 1997) ("Federal Rule of Evidence 703 permits the admission of expert opinion testimony even though the expert has relied on evidence that is inadmissible . . . ., [provided the inadmissible evidence is] of a kind reasonably relied on by experts in the field."). We are thus baffled by counsel's seeming acceptance of the expert's claim that the exclusion of the documents "gutted" the factual basis for his opinion.

Moreover, even if the exclusion of the documents would have prevented the expert from relying on them when giving his opinion, it is apparent from the record before us that the expert still could have testified that various defects existed. First, the district court admitted the document that counsel for the family described as "the single most important document in the case." J.A. 655. In addition, the family's expert had previously issued a report and given deposition testimony in which he concluded that the van's fuel system was defective, evidence that this court found to be sufficient to withstand Ford's previous motion for summary judgment. *See Binakonsky I*, 133 F.3d at 290 ("The plaintiffs have produced sufficient evidence about the fuel delivery system to submit the issue of unreasonable dangerous design to the jury."). The report listed the documents the expert had reviewed when reaching that opinion, and none of those documents were in the group excluded by the district court. Although the report anticipated that documents produced during discovery would be used as further support for the expert's opinion, the design defect opinion expressed

by the expert in his report and during his deposition was in no way dependent on the review of additional documents. Thus, even without relying on the excluded documents, the expert nonetheless could have testified about the existence of design defects. While that opinion may have been less expansive than the family and the expert would have liked, it would in any event have been an opinion sufficient to prevent the granting of judgment as a matter of law. Given these circumstances, we again are puzzled by the family's apparent capitulation to the expert's refusal to testify.

Clearly then, the exclusion of the documents, even if incorrect, created no legal impediment to the expert's testifying as to the existence of a defect, and the district court's exclusion of the documents can in no way be viewed as preventing the family from presenting its case. Instead, it was the family's inexplicable acquiescence to the recalcitrant expert witness that prevented the family from establishing its case. That error, however, is not one that can be corrected on appeal. If the family had put its expert on the stand to explain his understanding of the effect of the district court's exclusion of the documents, then perhaps our analysis here would be different. But given the record before us, we can reach no other conclusion.

III.

Because the family's failure to present a *prima facie* case was not effectively compelled by any improper rulings of the district court, the court quite correctly granted Ford's motion for judgment as a matter of law. And the granting of judgment as a matter of law renders unnecessary the consideration of many of the issues raised by the family on appeal.

Because the case never went to the jury, the family's challenge to the district court's refusal to bifurcate the liability and damages portions of the trial is moot, since the bifurcation was intended to limit the prejudicial effect of certain evidence upon the jury. And because the jury never rendered a verdict, the manner in which the court conducted voir dire is likewise moot.

For similar reasons, we need not consider the family's evidentiary challenges to the district court's refusal to limit evidence of Binakon-

sky's use of alcohol on the day of the accident and his history of drug and alcohol abuse. Because this case was not decided by a jury but instead was decided by the court as a result of the family's failure of proof, any improper evidence of the decedent's drug or alcohol use is irrelevant.

Finally, the family's challenge to the district court's pre-trial exclusion of certain evidence is likewise moot. It appears that this challenge encompasses much of the evidence that was excluded by the court during trial and led to the expert's refusal to testify, and we have already concluded that the refusal to admit that evidence cannot excuse the family's failure to present a *prima facie* case. As to any evidence not included in that ruling, the family does not suggest that the admission of that remaining evidence would have established the existence of a design defect in the Binakonsky van or would have affected the expert's willingness to testify after the other documents were excluded. Therefore, even if the documents had been admitted, the district court still would have granted Ford's motion for judgment as a matter of law.

Only two issues raised are arguably cognizable on appeal notwithstanding the entirely proper grant of judgment as a matter of law—the district court's denial of the family's motion for recusal and the court's refusal to give collateral estoppel effect to a state court verdict that was adverse to Ford.[2]

---

[2]Ford contends that none of the issues raised by the family should be considered. According to Ford, the family was unhappy with the way the trial was proceeding and simply chose not to continue at a point when counsel for the family conceded there was insufficient evidence of a design defect. Ford thus characterizes the inevitable granting of judgment as a matter of law as a consent judgment from which the family is not entitled to appeal. Ford argues that after the district court excluded the documents, the family should have continued with its case. According to Ford, if the jury returned a verdict in favor of Ford, then the family could appeal and its challenges could be evaluated in the context of a full record, against which the prejudicial effect of any errors by the district court could properly be evaluated. Ford contends that by refusing to follow the proper procedure and voluntarily electing not to proceed with its case, the family has waived its right to challenge any aspect of the trial. Because we resolve the issues of collateral estoppel and recusal in Ford's favor, we need not address this argument.

### A.

A trial judge must disqualify himself in any case "in which his impartiality might reasonably be questioned," 28 U.S.C.A. § 455(a) (West 1993), or in cases in which "he has a personal bias or prejudice concerning a party," 28 U.S.C.A. § 455(b)(1). A judge's refusal to recuse himself "is reviewed only for abuse of discretion." *United States v. Gordon*, 61 F.3d 263, 267 (4th Cir. 1995).

In this case, the family contends that the district court's actions during the course of the proceedings revealed an "extrajudicial predisposition against alcoholics and drunk drivers" that clouded the court's judgment. Brief of Appellants at 42. According to the family, the district court's "repeated references" to Binakonsky as an "incorrigible alcoholic and drug addict," Brief of Appellants at 42, which are for the most part contained in various written orders issued by the district court, demonstrate that the court was so biased and prejudiced against the family's case that recusal was required. We disagree.

The Supreme Court has explained the circumstances that must be established before a judge must recuse himself:

> [O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. They *may* do so if they reveal an opinion that derives from an extrajudicial source; and they *will* do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible.

*Liteky v. United States*, 510 U.S. 540, 555 (1994). "[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion . . . and can only in the rarest circumstances evidence the degree of favoritism or antagonism required . . . when no extrajudicial source is involved." *Id.* (internal citations omitted).

In this case, there was evidence presented during the course of the proceedings establishing that Binakonsky was drinking on the day of the accident and had a history of drug and alcohol abuse problems. The district court's recounting of this evidence in its orders is entirely unremarkable and does not indicate that the court relied on knowledge gained outside the protracted proceedings of this case. And the district court's rulings and other comments identified by the family do not reveal such "deep-seated" antagonism by the district court that would "make fair judgment impossible." While the district court may have frequently ruled against the family and may have approached the case in ways the family believed was improper, the family has simply failed to establish that recusal was required. *See Gordon*, 61 F.3d at 267-68 ("The Supreme Court has made crystal clear . . . that litigants may not make the trial judge into an issue simply because they dislike the court's approach or because they disagree with the ultimate outcome of their case.").

### B.

The collateral estoppel issue involves a jury verdict in a Maryland state court case.[3] When considering the preclusive effect in federal court of a state-court judgment, federal courts must apply the law of the state rendering the judgment. *See* 28 U.S.C.A. § 1738 (West 1994); *Marrese v. American Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985). Under Maryland law, collateral estoppel applies

---

[3]The family contends that the collateral estoppel issue must be considered because if the district court had given collateral estoppel effect to the state court action, then liability would have been established without expert testimony, thus rendering improper the grant of judgment as a matter of law. Even if the state-court judgment established the existence of a design defect, expert testimony would have been required to give the jury a context for evaluating the state court finding of a design defect and to establish proximate cause. The family seemed to suggest at oral argument that had the state-court verdict been given collateral estoppel effect, the district court's exclusion of the documents at trial would not have affected the expert's willingness or ability to testify about proximate cause. While we have real reservations about relying on this hyper-attenuated speculation about what might have happened at trial, we nonetheless will address the collateral estoppel issue out of an abundance of caution.

if (1) the issue decided in the prior adjudication is identical to the issue as to which collateral estoppel is sought in the present adjudication; (2) the prior adjudication was a final judgment on the merits; (3) the party against whom collateral estoppel is asserted was a party or in privity with a party in the prior adjudication; and (4) the party against whom collateral estoppel is being asserted had a full and fair opportunity to litigate the issue in the prior suit. *See, e.g., Colandrea v. Wilde Lake Cmty. Ass'n, Inc.*, 761 A.2d 899, 909 (Md. 2000).

In the state court case, the plaintiff owned a 1987 Ford F-150 pickup truck and was burned in a post-collision fire. The plaintiff's expert testified at trial that various manufacturing and design defects combined to cause the fire after the collision. Among the defects identified in that case were the use of incorrectly sized rivets and rivet holes, defective welds, improper placement of the fuel filter, the use of plastic connectors for the nylon fuel lines, and the absence of "anti-siphon" valves in the fuel lines. The jury returned a verdict in favor of the plaintiff. Through special verdict forms, the jury found that the truck's rivets were defectively manufactured and that the truck's "fuel system" was defectively designed.

In this case, the family contends that the nylon fuel lines were severed or disconnected during the collision and that the fuel system as designed allowed fuel to be continually injected into the engine compartment, thus feeding the post-collision fire. The design defects identified by the family include the use of nylon fuel lines, the use of plastic connectors on the fuel lines, and the absence of "anti-siphon" valves.

Although there obviously is some overlap between the liability theories in the state court case and this case, there are important differences in the cases that counsel against the application of collateral estoppel. While the truck in the state court case and the van in this case had similar fuel injection systems with nylon lines, the configuration of the system and placement of the lines was different in each vehicle. In addition, the family's expert believed that the nylon fuel lines were defective in and of themselves, while the expert in the state court action did not believe the lines themselves to be defective, but criticized the use of plastic connectors on the lines. Moreover, the state-court expert contended that the placement of the fuel filter was

a contributing cause of the fire in that case, an issue that is wholly absent from the case at bar.

The state-court jury found only that the "fuel system" was defectively designed, without specifying whether it was the use of plastic connectors, the placement of the fuel filter, the absence of anti-siphoning valves, or a combination of all of those problems that rendered the fuel system defective. Given the factual differences between this action and the state-court action, the differences in defects identified in each case, and the uncertainty about the precise basis for the state-court jury's finding, we agree with the district court that the finding of a fuel-system design defect in the state court action should not have been given collateral estoppel effect in this action. *See Colandrea*, 761 A.2d at 909 ("Collateral estoppel is not concerned with the legal consequences of a judgment, but only with the findings of ultimate fact, *when they can be discovered*, that necessarily lay behind that judgment." (emphasis added)); *cf. Board of County Supervisors v. Scottish & York Ins. Servs., Inc.*, 763 F.2d 176, 179 (4th Cir. 1985) (reversing district court's collateral estoppel ruling given the "impossibility of winnowing out the specific grounds upon which the jury based its general verdict where it was instructed that it could base liability on any one or more of six different theories").

## IV.

To summarize, we conclude that the district court properly granted Ford's motion for judgment as a matter of law after the family rested without presenting any expert testimony. Because the district court's prior rulings did not prevent the family from presenting a *prima facie* case, the granting of judgment as a matter of law moots many of the issues raised on appeal. As to the denial of the motion to recuse and the denial of the family's collateral estoppel motion, the only issues that arguably can be considered on appeal notwithstanding the granting of judgment as a matter of law, we find no error in the district court's rulings. Accordingly, the decision of the district court is hereby affirmed.

*AFFIRMED*